| | |
|---|---|
| ANDREW GIBSON, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>BARTLETT DAIRY, INC. and FARMLAND FRESH DAIRIES, LLC,<br><br>          Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff ANDREW GIBSON ("Plaintiff" or "Gibson"), a resident of Erie County, New York, individually and on behalf of other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendants BARTLETT DAIRY, INC. and its wholly owned subsidiary FARMLAND FRESH DAIRIES, LLC (collectively, "Farmland" or "Defendants") regarding the deceptive labeling, marketing, and sale of Defendants' dairy products ("the Products"),[1] and alleges the following based upon information, belief, and the investigation of his counsel:

## INTRODUCTION

1. Because of health concerns as well as animal-welfare and sustainability concerns, consumers are increasingly interested in and aware of how their food is produced.

2. For example, consumers are concerned that the use of antibiotics in animals raised

---

[1] The following Farmland Fresh Dairies products are deceptively labeled and advertised as alleged in this Complaint: Whole Milk, Chocolate Whole Milk, 2% Fat Reduced Milk, 1% Lowfat Milk, Fat Free Milk, Chocolate Fat Free Milk, Fresh Half & Half, Fresh 40% Heavy Cream, Ultra Pasteurized 40% Heavy Cream, Ultra Pasteurized 36% Heavy Cream, Ultra Pasteurized Light Cream, Ultra Pasteurized Half and Half, Ultra Pasteurized Fat Free Half and Half, Ultra Pasteurized Premium Egg Nog, Ultra Pasteurized Aerosol Real Whipped Light Cream, Sour Cream, Whole Milk Dahi Yogurt, Reduced Fat Buttermilk. Discovery may reveal that additional Farmland products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.

for food contributes to the growth of antibiotic-resistant bacteria that threaten human and animal health.

3. Also, consumers are concerned that antibiotics are used in industrial animal agriculture because the animals, including dairy cows, are subjected to treatment and conditions that inevitably make them sick.

4. Farmland knows that consumers seek out and wish to buy dairy products made by cows raised without antibiotics. Farmland also knows that consumers will pay more for such products than they will pay for products made by cows who were given antibiotics, or will buy more of such products than they will buy of products by cows who were given antibiotics.

5. To capture the growing market of consumers who wish to buy dairy products made by cows raised without antibiotics, Farmland includes the claim "No Antibiotics" on the retail packaging of the Products. An example of the Product labeling is shown below:



6.     The "No Antibiotics" claim is false, deceptive, and misleading. The Products are produced by cows who receive antibiotics. In addition, at least some of the Products, in their final form as sold to consumers, still contain detectable levels of antibiotics, which are then ingested by consumers.

7.     In small print on the back of their containers, Farmland's Product labels include a disclaimer apparently meant to limit the prominent front-of-package claim. That disclaimer states: "Delicious 100% real milk produced from cows not treated with rBST and tested for Beta-Lactam antibiotics. The FDA has found no significant difference from milk derived from rBST treated cows and those not treated."

8.     Reasonable consumers, seeing Farmland's prominent front-of-package "No Antibiotics" representation, would expect that the Products are made without the use of antibiotics and, therefore, never contain antibiotics. No reasonable consumer seeing the Product labels would understand that "No Antibiotics"—a blanket claim, not qualified on the front of the labels—means only that the Products are tested for one certain type of antibiotic.

9.     In sum, Farmland is deceiving consumers into believing the Products are made without the use of antibiotics, when in fact they come from cows who are treated with antibiotics, and that the Products contain no antibiotics, when in fact some of them do contain antibiotics.

10.    Farmland also deceives consumers into believing that its practices are better than other dairies' with respect to antibiotic use and monitoring, when in reality, Farmland does nothing more than the antibiotic testing that is legally required of all milk producers.

11.    By deceiving consumers about the nature and quality of the Products, Farmland is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.

12.    Consumers lack the information and scientific knowledge necessary to determine

whether the Products are in fact made with "No Antibiotics" and to know or to ascertain the true quality of the Products.

13. As a result of its false and misleading labeling and advertising, and omissions of fact, Farmland was and is able to sell the Products to consumers in the State of New York and throughout the Northeastern United States and to realize sizeable profits.

14. During any applicable statute of limitations period (the "Class Period"), Plaintiff and members of the Class (described below) saw Farmland's "No Antibiotics" misrepresentations when purchasing the Products. Plaintiff and members of the Class (described below) paid more for the Products based upon the misrepresentations than they otherwise would have paid, and/or purchased the Products, or purchased more of the Products, when they would not have if they had known the truth about Farmland's use of antibiotics. As a result, Plaintiff and Class Members suffered injury. Contrary to representations on the Products' labeling and advertising, consumers received Products made from animals given antibiotics, Products that themselves sometimes still contained those antibiotics.

15. Farmland's false and misleading representations and omissions violate New York's General Business Law §§ 349 and 350, the consumer protection statutes of all states where the Products are sold, and common law.

16. Because Farmland's labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature and quality of the Products, Plaintiff brings this deceptive advertising case on behalf of a class of consumers who purchased the Products, including a sub-class who purchased the Products in New York, and seeks relief including actual damages, interest, costs, and reasonable attorneys' fees. Even today, members of the proposed Class are purchasing the misrepresented Products, and they will continue to do so in the future unless Farmland's conduct is stopped.

## JURISDICTION AND VENUE

17.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). Plaintiff Gibson is a citizen of New York. There are at least 100 members in the proposed plaintiff class, including citizens of Connecticut, Delaware, Maryland, Massachusetts, New York, and New Jersey.[2]

18.     On information and belief, Defendant Bartlett Dairy, Inc. is a citizen of the State of New York, and Defendant Farmland Fresh Dairies, LLC is a citizen of the State of New York and the State of New Jersey.

19.     The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

20.     This Court has personal jurisdiction over the Defendants. The principal place of business of both Defendants is Jamaica, New York. Furthermore, Defendants regularly conduct and transact business in New York, purposefully avail themselves of the laws of New York, market their Products to consumers in New York, and distribute their Products to numerous retailers throughout the Northeastern United States, including in New York.

21.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Products and sales of the Products at issue, occurred within this District.

---

[2] Discovery may reveal that Farmland products are sold in additional jurisdictions. Plaintiff reserves the right to expand the proposed class accordingly.

## **PARTIES**

22.     Defendant Bartlett Dairy, Inc. is a New York business corporation that maintains its principal place of business in Jamaica, New York.

23.     Bartlett Dairy, Inc. advertises, markets, and distributes Farmland's Products in New York, New Jersey, Connecticut, Delaware, Maryland, and Massachusetts. Bartlett Dairy created and/or authorized the false and deceptive labeling and advertising of the Products.

24.     Farmland Fresh Dairies, LLC is a New Jersey limited-liability company that maintains its principal place of business in Jamaica, New York, where it maintains a shared headquarters with Bartlett Dairy, Inc.  It is a wholly owned subsidiary of Bartlett Dairy, Inc.

25.     Upon information and belief, Defendant Farmland Fresh Dairies, LLC uses its Jamaica, New York office as its primary address on business contracts and for filings with government agencies, including the New Jersey Division of Taxation. Farmland Fresh Dairies, LLC shares high-level management officials and jointly manages its business operations with Bartlett Dairy, Inc.

26.     Defendants manufacture and/or cause the manufacture of the Products, and market and distribute the Products in retail stores in New York and throughout the Northeastern United States, including Connecticut, Delaware, Maryland, Massachusetts, and New Jersey. Defendants created and/or authorized the false and deceptive labeling and advertising of the Products.

27.     On May 15, 2020, Plaintiff Gibson sent a letter via U.S. Certified Mail to Defendants detailing the claims and allegations set forth in this Complaint. Plaintiff simultaneously sent this letter to Defendants' counsel via email.

28.     At all times mentioned herein, Plaintiff Gibson was and is an individual consumer over the age of 18. Within the Class Period, Plaintiff purchased Farmland's products labeled "No

Antibiotics," including Farmland whole milk and chocolate milk, on multiple occasions from several retailers in the Buffalo, New York area, including a Rite-Aid store located at 424 Elmwood Ave, Buffalo, New York.

29.     In deciding to make his purchases, Gibson saw, relied upon,[3] and reasonably believed Farmland's "No Antibiotics" representations.

30.     Gibson was willing to pay the requested price for Farmland's Products because he expected the Products to have been made without the use of antibiotics and to never contain antibiotics.

31.     Had Gibson known at the time that Farmland's Products were made from cows that were given antibiotics and that the Products sometimes contain antibiotics, he would not have purchased or continued to purchase the Products.

32.     Gibson continues to purchase milk products, but does not currently purchase Farmland Products.

33.     Gibson plans to continue purchasing milk products in the future.

34.     Gibson wishes to be able to continue purchasing Farmland's Products and, therefore, wishes to see them truthfully made without antibiotics. Moreover, Gibson is aware that members of his proposed class are currently purchasing, and will continue to purchase, Farmland's Products, unaware that the "No Antibiotics" representations are not correct, unless Farmland's conduct is enjoined.

## FACT ALLEGATIONS

35.     American consumers increasingly and consciously seek out foods, including dairy products, that are made without the use of antibiotics.

---

[3] Reliance is not an element of claims under New York General Business Law §§ 349 & 350.

36.     Antibiotics are used extensively in factory-style dairy production because the treatment and conditions to which cows are subjected impair their health and cause infections. The majority of dairy cows in the United States are confined indoors and not allowed to graze on pasture.[4] Teat trauma caused by milking machines, genetic selection for high milk yields, and poor cleanliness make cows susceptible to clinical mastitis from pathogenic bacteria, which is the most commonly reported health problem in the dairy industry.[5] The stresses caused by abnormal living conditions make dairy cows vulnerable to disease and dependent on antibiotics.

37.     According to the Centers for Disease Control, "Antibiotic resistance—the ability of germs to defeat the drugs designed to kill them—is one of the greatest global public health challenges of our time."[6] More than 2.8 million antibiotic-resistant infections are reported in the United States each year, and more than 35,000 people die as a result.[7] In 2019, the World Health Organization characterized antibiotic resistance as "one of the most urgent health risks of our time" and as an "'invisible pandemic'," with the emergence of infections that are untreatable by all classes of antibiotics.[8]

38.     Given the threat of antibiotic-resistant bacteria, reasonable consumers want to avoid buying products made from animals who were given antibiotics.

39.     Farmland knows that consumers seek out and will pay more for dairy products that they believe come from cows raised without the use of antibiotics. For this reason, Farmland prominently labels the Products with the claim "No Antibiotics."

---

[4] The Humane Society of the United States, *An HSUS Report: The Welfare of Cows in the Dairy Industry* at 3, https://www.humanesociety.org/sites/default/files/docs/hsus-report-animal-welfare-cow-dairy-industry.pdf.

[5] *Id.* at 5.

[6] *Antibiotic Resistance Threats in the United States, 2019*, Centers for Disease Control (Dec. 2019) at 3, https://www.cdc.gov/drugresistance/pdf/threats-report/2019-ar-threats-report-508.pdf.

[7] *Id.* at vii.

[8] *In the face of slow progress, WHO offers a new tool and sets a target to accelerate action against antimicrobial resistance*, World Health Organization (June 18, 2019), https://www.who.int/news-room/detail/18-06-2019-in-the-face-of-slow-progress-who-offers-a-new-tool-and-sets-a-target-to-accelerate-action-against-antimicrobial-resistance.

40. Upon information and belief, Farmland has profited from its falsely marketed products.

## I. Farmland Sources Its Products From Farms That Use Antibiotics.

41. Upon information and belief, Farmland sources its Products from dairy farms that use antibiotics. Despite its "No Antibiotics" representations, Farmland does not attempt to ensure that its milk comes only from cows who were not given antibiotics.

42. Farmland represents that its milk is tested for beta-lactam drugs, which include a small fraction of the many kinds of antibiotics that may be used in dairy production.

43. Testing for beta-lactam antibiotics is legally required of all dairy producers in the United States.[9]

44. Farmland's testing for antibiotic residues is not designed to, and does not, ensure that antibiotics were not given to the cows who produce the Products. Antibiotics are detectable in milk only for a short time period after they are administered. The law requires producers to withhold from the market milk from cows treated with drugs for a sufficient amount of time to minimize the presence of drug residues in milk.

45. Farmland's testing for beta-lactam antibiotics does not detect the presence of other classes of antibiotics that may be used in dairy cows, such as tetracyclines, sulphonamides, macrolides, lincosamides, amphenicols, and aminoglycosides.[10]

46. Independent laboratory testing commissioned by Plaintiff's counsel confirms that Farmland's Products come from cows who are administered antibiotics. In testing of Farmland's heavy cream, which is marketed with the claim "No Antibiotics," the laboratory found detectable levels of lincomycin, an antibiotic.

---

[9] U.S. Food and Drug Administration, *Grade "A" Pasteurized Milk Ordinance, 2017 Revision*, Appendix N.
[10] *Multicriteria-based Ranking Model for Risk Management of Animal Drug Residues in Milk and Milk Products*, Food and Drug Administration (Apr. 2015) https://www.fda.gov/media/91397/download.

47.     According to the information provided on Farmland's website, the Products contain milk from facilities that use substantially similar or identical production practices, quality assurance practices, and food safety practices.[11]

48.     Farmland knows that its suppliers use antibiotics, because on information and belief it is sometimes required to reject shipments of milk that have detectable levels of beta-lactam antibiotics.[12]

## II.     Farmland Falsely Represents That the Products Are Made from Cows That Are Not Given Antibiotics and Omits Material Facts.

49.     The retail packaging of Farmland's Products features the claim "No Antibiotics."

50.     Reasonable consumers interpret Farmland's claims as meaning that its Products are different from and better than other dairy products.

51.     Reasonable consumers interpret Farmland's claims as meaning that its Products come from cows who are not given antibiotics and that the Products never contain antibiotics.

52.     A 2018 nationally representative consumer survey conducted by Consumer Reports Survey Group found that 67% of consumers believe the claim "no antibiotics" means that no antibiotics were administered to the animals.[13]

53.     This understanding is consistent with the United States Department of Agriculture Food Safety and Inspection Service's policy for use of the similar claim "antibiotics free" on food labels. Such a claim is permitted only with evidence that the source animals have not been administered antibiotics.[14]

---

[11] *Exceptional processing begins with the finest, purest raw materials from the family farms that support our brand*, Farmland Fresh Dairies, http://farmlandmilk.com/processing.php (last visited June 26, 2020).

[12] Farmland Fresh Dairies, *Employee Review*, Glassdoor, https://www.glassdoor.com/Reviews/Employee-Review-Farmland-Fresh-Dairies-RVW3587018.htm (last visited June 26, 2020).

[13] *Natural and Antibiotics Label Survey: 2018 Nationally Representative Phone Survey*, Consumer Reports Survey Group (May 1, 2018), https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf.

[14] U.S. Department of Agriculture Food Safety and Inspection Service, *Labeling Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submissions* (Dec. 2019).

54. In small print on the back of its packaging, Farmland's Products include a statement that the Products are tested (apparently only) for beta-lactam antibiotics.

55. Farmland's packaging and advertising fail to inform consumers that its milk comes from dairy farms that administer antibiotics to their cows, which is a material omission, given that consumers necessarily see the prominent "No Antibiotics" representation.

56. Farmland's packaging and advertising fail to inform consumers that the law requires all milk to be tested for beta-lactam antibiotics, which is a material omission, given that the prominent "No Antibiotics" representation suggests that Farmland's Products are exceptional.

57. Farmland's packaging and advertising fail to inform consumers that Farmland does not routinely test for any of the many types of antibiotics, other than beta-lactam antibiotics, that are administered to dairy cows, which is a material omission, given that the front-of-label representation "No Antibiotics" is not qualified.

## III. Farmland's "No Antibiotics" Claims Are Material to Reasonable Consumers.

58. Consumers are aware of, and concerned about, the health threat posed by antibiotic-resistant bacteria. The Consumer Reports survey cited above found that most consumers are aware that antibiotic use in farmed animals may diminish their effectiveness in humans, and 43% of consumers were highly concerned about this.[15]

59. Consumers are also concerned that antibiotics are used in dairy farming because the inhumane practices and conditions are harmful to the cows' health and welfare, which necessitates the use of antibiotics.

60. Given these concerns, consumers seek out and are willing to pay more for milk products that they believe are made without the use of antibiotics than they are willing to pay for

---

[15] Id.

milk products from producers that use antibiotics. The Consumer Reports survey found that more than 60% of consumers would pay more for animal products labeled as being raised without antibiotics.[16]

61.     Consumers likewise seek out and are willing to purchase, or to purchase more of, milk products that they believe are made without the use of antibiotics than milk products from producers that use antibiotics.

62.     Consumers are further willing to pay more for Products that are guaranteed to contain no antibiotics than for products that may sometimes contain antibiotics, or to choose these products or purchase more of them.

## IV.     Farmland's Claims and Omissions Mislead and Harm Consumers.

63.     Farmland's conduct in labeling and advertising the Products with the claim "No Antibiotics" deceived and/or was likely to deceive the public. Consumers have been, and continue to be, deceived into believing that the Products are made from cows that have not been given antibiotics, when in fact the Products come from dairy farms that use antibiotics.

64.     Consumers cannot discover the true nature of the Products from reading the label or Farmland's advertising materials. Ordinary consumers do not have sufficient knowledge about the dairy industry to learn that antibiotics are used in the production of Farmland's Products.

65.     Farmland deceptively and misleadingly conceals material facts about the Products, namely, that the Products are sourced from dairy farms that use antibiotics, that Farmland's antibiotic testing does not ensure that antibiotics have not been given to the cows, that the Products sometimes contain antibiotics, and that all milk producers are legally required to test for the antibiotics that Farmland tests for.

---

[16] *Id.*

66.     Farmland knew what representations it made on the labels and advertising of the Products. It also knew how the Products were sourced and produced. Farmland thus knew, or should have known, the facts demonstrating that the Products were falsely advertised.

67.     The production process Farmland uses for the Products is known only to Farmland and its suppliers and has not been disclosed to Plaintiff or to the class of consumers he seeks to represent.

68.     Farmland's concealment tolls the applicable statute of limitations.

69.     To this day, Farmland continues to conceal and suppress the true nature, identity, sources, and methods of production of its Products.

70.     In making the false, misleading, and deceptive representations and omissions at issue, Farmland also knew and intended that consumers would choose to buy, and would pay more for, products promoted with the claim "No Antibiotics," furthering Farmland's private interest of increasing sales of its products and decreasing the sales of its competitors' products that are truthfully marketed.

71.     Had Farmland not made the false, misleading, and deceptive representations and omissions, Plaintiff and the class members would not have been willing to pay the same amount for the Products they purchased, would have chosen competing products, and/or would not have purchased as much of the Products.

72.     Farmland's ongoing false and misleading labeling and advertising of the Products continues to cause harm to the consumers Plaintiff seeks to represent, and will continue absent injunctive relief.

73.     Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold using false and misleading labeling and advertising.

## CLASS ALLEGATIONS

74.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

75.     This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

76.     The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all consumers who purchased Farmland's Products (as defined herein) during the Class Period (the "Class").

77.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased Farmland's Products (as defined herein) within the State of New York during the Class Period (the "New York Subclass").

78.     Excluded from the Class are (1) Defendants, any entity or division in which a Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

79.     Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

80.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

81.     All members of the Class and New York Subclass were and are similarly affected by the deceptive labeling and advertising of Farmland's Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

# I.      Numerosity.

82.     At this time, Plaintiff does not know the exact number of the Class members. Based on the wide distribution of Farmland's Products, Plaintiff believes that the Class comprises many thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

# II.     Commonality.

83.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     Whether Defendants are responsible for the labeling and advertising at issue;

(b)     Whether the labeling and advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

(c)     Whether Farmland breached a warranty created through the labeling and marketing of its Products; and

(d)     Whether Farmland's conduct as set forth above injured, and may continue to injure, Plaintiff and Class members.

# III.    Typicality.

84.     Plaintiff's claims are typical of those of the Class, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the Class members. Plaintiff, like all members of the Class, relied[17] on Defendants' false and misleading representations and purchased Farmland's Products, or purchased more of them, or paid more for the Products than he would have paid if the products had been properly labeled, and sustained

---

[17] Reliance is not an element of claims under New York General Business Law §§ 349 & 350.

injury from Farmland's wrongful conduct. Further, there are no defenses available to Defendant that are unique to Plaintiff.

## IV.       Adequacy.

85.       Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel have represented consumers in a variety of actions seeking to protect consumers from fraudulent and deceptive practices.

## V.       Predominance and Superiority of Class Action.

86.       The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

87.       Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

88.       Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will

allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

89.     Plaintiff is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

90.     Certification also is appropriate under Rule 23(b)(2) because Defendant acted, or refused to act, on grounds generally applicable to the Class.

91.     Further, given the large number of consumers of Farmland's Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION

### COUNT I

**Violation of New York General Business Law § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

92.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

94.     Farmland has marketed the Products with the phrase "No Antibiotics" when, in fact, they sometimes contain antibiotics and are sourced from dairy farms that administer antibiotics to their cows.

95.     Farmland has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Farmland's violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

96. Farmland's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not have purchased as much.

97. Defendants made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

98. Plaintiff and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

99. Farmland's advertising and the Products' packaging and labeling induced Plaintiff and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

100. As a direct and proximate result of Farmland's violation of § 349, Plaintiff and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

101. By reason of the foregoing, Farmland is liable to Plaintiff and the other members of the New York Subclass for actual damages or fifty dollars ($50) for each purchase of a Farmland Product (whichever is greater), attorneys' fees, and the costs of this suit. The court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $1000, based on Farmland's willful and knowing violation of § 349.

102. In addition, Farmland continues engaging in the deceptive conduct and, upon information and belief, will do so unless enjoined by this Court. Members of the New York Subclass that Plaintiff seeks to represent are purchasing, and will continue to purchase, the misrepresented Products.

103.    The unfair and deceptive acts and practices of Farmland, as described above, present an ongoing threat to Plaintiff and the other members of the New York Subclass.

## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of Plaintiff and the New York Subclass)

104.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105.    The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

106.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

107.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

108.    Plaintiff and the members of the New York Subclass are consumers who purchased Farmland's Products in New York.

109.    As a seller of goods to the consuming public, Farmland is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

110.    Farmland's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Farmland's advertising fails to reveal material facts with respect to its Products, as described above, constitute false advertising in violation of the New York General Business Law.

111.    Farmland's false advertising was knowing and intentional.

112.     Farmland's actions led to direct, foreseeable, and proximate injury to Plaintiff and the members of the New York Subclass.

113.     As a consequence of Farmland's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products, and/or would have purchased less of the Products; moreover, as a result of Farmland's conduct, Plaintiff and the other members of the New York Subclass received products of less value than what they paid for.

114.     By reason of the foregoing, Farmland is liable to Plaintiff and the other members of the New York Subclass for actual damages or five hundred dollars ($500) for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $10,000, based on Farmland's willful and knowing violation of § 350.

115.     If its conduct is not enjoined by this Court, Farmland will continue to deceptively market its Products in New York.

**COUNT III**
**Violation of State Consumer Protection Statutes**
**(On behalf of Plaintiff and all Class Members)**

116.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

117.     Defendants' unfair, false, misleading and fraudulent practices in marketing the Products, as alleged herein, violate each of the following state consumer protection statutes to the extent that Defendants' Products have been marketed in, and purchased by Class members in the respective state: Connecticut General Statutes § 42-110a, *et seq.*; Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.*, and Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §

2531, *et seq.*; Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*; Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2; and N.J. Stat. Ann. § 56:8-1, *et seq.*[18]

118.   Defendants violated these statutes by falsely and deceptively labeling and advertising their Products with "No Antibiotics" and by omitting material facts.

119.   Defendants' deceptive labeling and advertising was material to Plaintiff's and Class members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

120.   Defendants acted willfully, wantonly, and with reckless disregard for the truth.

121.   Plaintiff and the Class members have been injured in that they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

122.   Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees and costs, and other appropriate injunctive and declaratory relief.

## COUNT IV
**Breach of Express Warranty**
**(On behalf of Plaintiff and all Class Members)**

123.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.   Defendants provided Plaintiff and other members of the Class with a written, express "No Antibiotics" warranty.

---

[18] There is no material conflict between these state statutes and New York General Business Law §§ 349 & 350 because these state statutes (1) do not require reliance by unnamed class members and (2) allow class actions.

125.     These affirmations of fact or promises by Farmland relate to the goods and became part of the basis of the bargain.

126.     Plaintiff and members of the Class purchased Farmland's Products believing them to conform to the express warranties.

127.     Farmland breached these warranties, resulting in damages to Plaintiff and other members of the Class, who bought Farmland's Products but did not receive the goods as warranted.

128.     As a proximate result of the breach of warranties by Defendants, Plaintiff and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased Farmland's Products, or would have purchased Farmland's Products on different terms, or would have purchased less of Farmland's Products.

129.     Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

<u>**COUNT V**</u>
**Unjust Enrichment**
**(In the alternative, on behalf of Plaintiff and all Class Members)**

130.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

131.     As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales of Farmland's Products at the expense of Plaintiff and the Class members.

132.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class members, in light of the fact that the Products they purchased were not what Defendants represented them to be.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class providing such relief as follows:

A.     Certification of the Class and New York Subclass proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff Andrew Gibson as representative of the Class and New York Subclass and appointment of his undersigned counsel as counsel for the Class and New York Subclass;

B.     A declaration that Farmland is financially responsible for notifying members of the Class of the pendency of this suit;

C.     An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Farmland as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D.     Restitution, disgorgement, refund, and/or other monetary damages, including treble damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.     An order enjoining Farmland's unlawful and deceptive acts;

F.     Statutory or actual damages pursuant to New York General Business Law §§ 349 and 350, and treble damages pursuant to § 349;

G.     Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H.     Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff Andrew Gibson hereby demands a trial by jury.

DATED: June 26, 2020

**RICHMAN LAW GROUP**

By:

Kim E. Richman
krichman@richmanlawgroup.com
8 W. 126th Street
New York, New York 10027
Telephone: (718) 878-4707
Facsimile: (212) 687-8292

*Attorney for Plaintiff and Proposed Class*