UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

ANDREW GIBSON, on behalf of himself and
all others similarly situated,

                     Plaintiff,

       -against-

BARTLETT DAIRY, INC. and FARMLAND
FRESH DAIRIES, LLC,

                     Defendants.
_____

**MEMORANDUM & ORDER
20-CV-2848 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Andrew Gibson purchased Defendants' dairy products because each of their products presented the prominent label "No Antibiotics." But after his lawyer commissioned a laboratory test, allegedly revealing antibiotics in Defendants' heavy cream, Plaintiff now contends that Defendants deceptively labeled, marketed, and sold their dairy products. This class action complaint followed. Plaintiff, on behalf of himself and putative class members, alleges violations of New York General Business Law ("N.Y. G.B.L.") §§ 349, 350, the consumer protection laws of five other states, and common law claims for breach of express warranty and unjust enrichment.

Pending before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons that follow, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED, and their motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part.

## I.  BACKGROUND

The following facts are taken from the Complaint, which the court accepts as true for purposes of Defendants' motion to dismiss. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

### A.  Facts

Defendant Farmland Fresh Dairies, LLC is a New Jersey limited liability company with its principal place of business in New York. (Compl. (Dkt. 1) ¶ 24.) Farmland is a wholly owned subsidiary of Defendant Bartlett Dairy, Inc., a business corporation incorporated in New York, where it also has its principal place of business. (*Id.* ¶¶ 22, 24.) An overlapping team of senior Bartlett and Farmland officials jointly manages Farmland's business operations out of a shared New York headquarters. (*Id.* ¶¶ 24-25; *see also* Decl. of Thomas A. Malave ("Malave Decl.") (Dkt. 34-1) ¶ 1.)

Farmland manufactures a variety of dairy products (the "Products") sold in retail packaging that prominently display the phrase "No Antibiotics." (Compl. ¶¶ 5, 23, 26.) Bartlett "created and/or authorized" the "No Antibiotics" labeling and advertises, markets, and distributes the Products in several states in the northeastern United States, including New York, Connecticut, Delaware, Maryland, Massachusetts, and New Jersey. (*Id.* ¶ 23.) In addition to the "No Antibiotics" label on the front of the Products' packaging, a small-print label on the back clarifies: "Delicious 100% real milk produced from cows not treated with rBST and tested for Beta-Lactam antibiotics." (*Id.* ¶ 7.) Defendants designed the "No Antibiotics" label to appeal to health-conscious consumers, as well as those consumers concerned about animal welfare and sustainability, *i.e.*, consumers who object to the use of antibiotics in food-producing animals. (*Id.* ¶¶ 1-

3.) Defendants understood that such consumers would pay a premium for, or buy a greater volume of, dairy products they believe to be produced by cows raised without antibiotics. (*Id.* ¶¶ 4-5.)

But laboratory testing commissioned by Plaintiff's counsel allegedly detected the antibiotic lincomycin in Farmland heavy cream. (*Id.* ¶ 46.) In addition, Farmland employees must sometimes reject incoming shipments of milk for the presence of beta-lactam antibiotics, which Plaintiff interprets to mean that Farmland procures milk from dairy farms that administer antibiotics to their cows. (*See id.* ¶¶ 41, 48.) Thus, notwithstanding the "No Antibiotics" claim, the Products may derive from antibiotics-treated cows, and at least some Products still contain antibiotics when sold to and ingested by consumers. (*Id.* ¶ 6.)

On several occasions during the class period, Plaintiff, a New York resident, purchased Farmland's products labeled "No Antibiotics," such as Farmland whole milk and chocolate milk, from retailers in and near Buffalo, New York. (*Id.* ¶ 28.) In making these purchases, Plaintiff saw and relied upon the "No Antibiotics" representations; he alleges he would not have purchased the Products had he known they came from antibiotics-treated cows or that the Products themselves contained antibiotics. (*Id.* ¶¶ 29-31.) Since learning this information, Plaintiff has ceased purchasing the Products, but he wishes to see the Products "truthfully made without antibiotics" so that he may resume purchasing them. (*Id.* ¶¶ 32, 34.)

### B. Jurisdiction and Choice of Law

Plaintiff brings this action on behalf of a putative class of similarly situated persons pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (*Id.* ¶¶ 17, 81.) Plaintiff's proposed class consists of "all consumers who purchased [the Products] during the Class Period." (*Id.* ¶ 76.) Plaintiff also proposes a sub-class to consist of "all persons who purchased [the Products] within the State of New York during the Class Period."

(*Id.* ¶ 77.)  Plaintiff alleges that "there are at least 100 members in the proposed plaintiff class, including citizens of Connecticut, Delaware, Maryland, Massachusetts, New York, and New Jersey." (*Id.* ¶ 17.) He further alleges that "[t]he amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs." (*Id.* ¶ 19.) The parties do not dispute that New York law governs Plaintiff's common law claims.

### C.  Plaintiff's Claims and Defendants' Motion to Dismiss

Plaintiff filed a class action complaint on June 26, 2020, asserting five claims: (1) deceptive acts and practices;(2) false advertising in violation of New York State's consumer protection statutes; (3) violation of five other states' consumer protection statutes; (4) breach of express warranty; and (5) unjust enrichment. (*Id.* at 17-22.) Plaintiff seeks monetary and injunctive relief. (*Id.* at 23.)

On November 16, 2020, Defendants moved to dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction, or, in the alternative, to dismiss all claims against Bartlett and the unjust enrichment claims against both Defendants for failure to state a claim. (Defs.' Mot. to Dismiss ("Mot.") (Dkt. 34-2).)

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

Under Rule 12(b)(1), the court must dismiss a claim "for lack of subject matter jurisdiction . . . when the . . . court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[1] When considering a Rule 12(b)(1) motion, the court "must take all uncontroverted facts in the complaint . . . as true, and draw all

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where, however, the facts are disputed, "the party asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists."" *Id.* (quoting *Makarova*, 201 F.3d at 113). When a defendant moves to dismiss a claim both for lack of subject matter jurisdiction and on other grounds, the court should address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

1.   CAFA Jurisdiction

CAFA "confer[s] original federal jurisdiction over any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (5)(B), (6)). Under CAFA, the party asserting subject matter jurisdiction has the burden of proving, to a reasonable probability, that each jurisdictional prerequisite is satisfied. *See Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014). In the typical CAFA case, it is the defendant that must carry this burden to remove the case from state court to federal court. *See Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 960 (S.D.N.Y. 2014). But where, as here, the plaintiff originally filed suit in federal court, the burden rests instead with the plaintiff. *See id.*

Plaintiff alleges, in terms tracking the statutory language, that the parties and their controversy satisfy CAFA's jurisdictional prerequisites. (*See* Compl. ¶¶ 17-19.) Defendants doubt that Plaintiff can show damages of at least $5 million but do not directly contest his jurisdictional pleading. The court therefore assumes the Complaint's allegations to be true, as Rule 12(b)(1) requires, and

finds that CAFA confers federal subject matter jurisdiction over this action.

### 2.   CAFA Exceptions

Once jurisdiction based on CAFA is established, in narrow circumstances a district court must refrain from exercising that jurisdiction. Here, Defendants move to dismiss Plaintiff's complaint in accordance with the "home state" exception to CAFA jurisdiction. Under the home state exception, the court "shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."[2] 28 U.S.C. § 1332(d)(4)(A)(i), (B). Citizenship reflects an individual's domicile, which in turn consists of: "(1) physical presence in a state, and (2) the intent to make the state a home." *Hart*, 967 F. Supp. 2d at 964 (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). For purposes of the home state exception, citizenship "shall be determined . . . as of the date of filing of the complaint or amended complaint." 28 U.S.C. § 1332(d)(7).

"[T]he party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies." *Gold*, 2012 U.S. Dist. LEXIS 67211, at *1.. "The Second Circuit has not resolved the level of proof required to establish an exception to CAFA jurisdiction." *Ramirez v. Oscar De La Renta, LLC*, No. 16-CV-7855 (RA), 2017 U.S. Dist. LEXIS 72781, at *19 (S.D.N.Y. May 12, 2017).

---

[2] Although mandatory, the home state exception is non-jurisdictional. *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 139 (2d Cir. 2013). That is, rather than "divest the district court of subject matter jurisdiction," it "operates as an abstention doctrine." *Gold v. New York Life Ins. Co.*, No. 09-cv-3210 (WHP), 2012 WL 1674300, at *2 (S.D.N.Y. May 14, 2012), *aff'd*, 730 F.3d 137 (2d Cir. 2013)).

However, this court joins the "emerging consensus" in holding that the party asserting a CAFA exception must establish its elements by a preponderance of the evidence. *See id.* (collecting cases from the Third, Fifth, Sixth, Seventh, and Ninth Circuits).

Accordingly, for Defendants to invoke CAFA's home state exception and succeed on their Rule 12(b)(1) motion to dismiss, they must establish by a preponderance of the evidence that at least two-thirds of the proposed plaintiff class were citizens of New York as of June 26, 2020.[3] To that end, Defendants submit evidence demonstrating "that 69.5% of aggregate sales for all years from 2016 to 2020 were to customers located in New York State." (Malave Decl. ¶ 6.) This figure drops to 68% for 2020. (*See* Ex. A to Malave Decl. at ECF p. 8.)[4]

Plaintiff raises several decidedly unpersuasive objections to Defendants' evidence. For example, he argues that Defendants' failure to account for "unsold inventory and inventory shrinkage (*e.g.*, loss of inventory from theft, damage, administrative error, etc.)" produces over-inclusive sales data. (Pl.'s Opp. to Mot. to Dismiss ("Opp.") (Dkt. 34-3) at 8-9.) Assuming this to be true, though, Plaintiff does not posit a theory for why the impact would be non-uniform across state lines. (*See* Malave Reply Decl. ¶ 15.) Plaintiff also faults the inclusion in Defendants' data of

---

[3] The parties engaged in jurisdictional discovery on this issue. (*See* Nov. 23, 2020 Order.)

[4] Defendants are not retailers; they primarily sell the disputed products to "institutions, bodegas, restaurants and retail stores," and sell an additional "small percentage" to non-party distributors. (Malave Reply Decl. ¶ 4.) It is not entirely clear from Defendants' briefing whether these non-party distributors are exclusively located outside New York. (*See id.* ¶¶ 4, 9.) However, Defendants claim to have classified all sales to non-New York distributors as non-New York sales, even though those distributors sell "large amount of product back into New York State." (*Id.* ¶ 9.) And they claim to have done the same for any New York distributor that made any distributions outside New York. (*Id.*)

sales to "restaurants and other institutions that do not sell the packaged Products to consumers at all." (Opp. at 7.) But the Complaint is ambiguous as to whether such institutional purchasers are to be categorically excluded from the putative class. (*See* Compl. ¶¶ 74-81.) In view of this ambiguity, made worse by Plaintiff's stipulation that the class definitions may yet be "narrowed, expanded, or otherwise modified," (*id.* ¶ 80), the court will not penalize the data's inclusion of institutional sales.[5]

These criticisms aside, the court ultimately agrees that Defendants have not met their burden to establish that at least two-thirds of the proposed plaintiff class were citizens of New York at the time of filing. The flaw in Defendants' data is that sales numbers extending back several years are minimally probative of the central issue under the home state exception: the class members' state citizenship at the time the action was commenced.[6] As one court recently explained, "[a] bare recitation of the location of purchases . . . is at least one step removed from the conclusion that . . . those who make[] purchases in New York are domiciled in New York." *Cunningham v. Pret A Manger (USA) Ltd.*, No. 19-CV-2322 (CM), 2020 WL 122835, at *4 (S.D.N.Y. Jan. 10, 2020) (declining to apply the home state exception in a consumer protection class action despite evidence that 72% of the relevant food sales took place in New York). Rather, "more definitive indicia of citizenship" are required, particularly given that "tens of

---

[5] The court likewise declines Defendants' invitation to expressly confine at this stage the putative class's membership to "individual consumers [who purchased Farmland products] in a grocery store." (Malave Reply Decl. ¶ 14 n.3.)

[6] There may also be reasons to wonder how well aggregate sales numbers (in terms of dollars) translate to the number of customers (in terms of people). But the court has no data on this point.

millions of non-New Yorkers commute to work in or visit New York every year."[7] *Id.* at *4-5.

In this case, Plaintiff directs the court's attention to an online tool of the Census Bureau indicating that, for 2018, 8.3% of individuals employed in New York lived elsewhere.[8] Of course, this isolated data point cannot settle whether two-thirds of the class are New York citizens.[9] All of this may seem fussy, but it demonstrates the narrowness of Defendants' margin of error: the two-thirds threshold would not be reached if the net effects of commuting, tourism, border-community shopping, and business travel reduce New York citizens' share of the market for Defendants' dairy products by only a few percentage points. Defendants' margin gets even narrower to the extent that any members of the proposed class who were New York citizens at the time of purchase established a new domicile in a different class state by June 26, 2020.[10]

---

[7] Although the *Cunningham* court applied a reasonable certainty standard, the issues inherent in the use of sales data to prove citizenship are no less troublesome under the preponderance test.

[8] Running the tool for other years in the class period yields similar results, ranging from 7.9% in 2016 to 8.4% in 2019. The court takes judicial notice of these figures. *See* Fed. R. Evid. 201(a)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[9] For one thing, it omits any reverse-commuter offset. For another, the subset of interstate commuters who shop for perishable goods near work before heading home is presumably rather small. (*See* Malave Reply Decl. ¶ 8.) On a related note, the parties have not presented evidence or argument regarding the prevalence of people who both reside and work in a state bordering New York but do their shopping in New York, or vice versa.

[10] Of course, as with reverse-commuters, this effect may have been offset to an unknown degree by migration into New York. *See Hart*, 967

In deciding whether to make the inference that Defendants pro-
pose—from evidence of sales locations to conclusions about
purchasers' citizenship—it is useful to consider not only *Cunning-
ham* but also how courts have treated more direct evidence of
citizenship. For example, in *Hart v. Rick's NY Cabaret Int'l, Inc.*,
the court was unpersuaded by data indicating that either 69% or
71% of class members' last-known addresses were New York ad-
dresses. 967 F. Supp. 2d at 963-64. As the court noted, even a
current mailing address gives minimal insight into an individual's
intent to remain in place. *Id.* at 964. And a last-known address
may be misleading even as to an individual's current physical
presence. *Id.* at 964-65. Noting the moving party's failure to cure
or offset these defects, the court declined to apply the mandatory
CAFA exceptions: "[the] data provides scant margin for error,
while, on the record presented, presenting a substantial likeli-
hood of such error." *Id.* at 965.

*Sorrentino v. ASN Roosevelt Ctr., LLC* took a similarly dim view of
mailing-address evidence. There, the last-known addresses for ei-
ther 89% or 85% of a sample of proposed class members were
New York addresses. 588 F. Supp. 2d 350, 356 (E.D.N.Y. 2008).
The plaintiffs, moving for remand, supplemented this data with
the "common sense" notion that more than two thirds of a group
of individuals who had previously resided in New York likely
were New York citizens as of the filing of the complaint. *See id.*
But the court found their data unreliable to the extent it consisted
of mailing addresses at the defendant apartment complex, which
proved only that, "at one time, [the plaintiffs had] maintained
apartments in New York." *Id.* at 357.

---

F. Supp. 2d at 965 n.4 (allowing for the possibility that, as to some
plaintiffs, the "temporal factor might benefit [the defendant's] claim
that the local controversy exception fits").

Defendants' data resembles the data rejected in *Cunningham*, *Hart*, and *Sorrentino*: it was never particularly reliable as to citizenship, had likely grown stale as of the filing date, and, in view of its defects, is simply too close to the two-thirds line. Defendants correctly argue that the court is permitted, even required, to make "reasonable assumptions" in determining the applicability of a mandatory CAFA exception. *See, e.g.*, *Kurovskaya v. Project O.H.R., Inc.*, 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 79-80 (S.D.N.Y. 2006). But the inference Defendants urge on this court would be unreasonable. From the bare fact that 69.5% of the covered sales occurred in New York, Defendants argue that "simple logic" dictates that the two-thirds of the sales were to New York citizens. (Mot. at 3.) The error in this reasoning is suggested by Defendants' own insistence that (1) "[m]ilk products are perishable goods and are *generally* purchased at a store where consumers buy their groceries," (2) "[c]ommon sense dictates that *most* sales of these products are made in the community in which the retail customer resides," and (3) "it is . . . simple arithmetic that the class plaintiffs would also be located within New York State in a *similar* percentage." (Defs.' Reply in Supp. of Mot. to Dismiss (Dkt. 34-6) at 3; Mot. at 6 (emphasis added).) Those points—inarguable as they may be—fail to establish by a preponderance of the evidence that at least two-thirds of the proposed plaintiff class were citizens of New York as of June 26, 2020. Defendants' margin for error too thin; their evidence too weak. Accordingly, Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction is DENIED.

## B.  Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Brown v. Omega Moulding Co.,* No. 13-CV-5397 (SJF) (ARL), 2014 WL 4439530, at *2 (E.D.N.Y. Sept. 9, 2014) (citing *Aegis Ins. Services, Inc. v. 7 World Trade Co.*, L.P., 737 F.3d 166, 176 (2d Cir. 2013)).

### 1.   Motion to Dismiss Claims Against Bartlett

### a.   *Statutory Consumer Protection Claims*

Plaintiff brings claims under N.Y. G.B.L. §§ 349 and 350; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat., § 42-110a, *et seq.*; the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511–2528, and Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*; the Maryland Consumer Protection Act, Md. Com. Law §§ 13-101 *et seq.*; the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2; and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2. The court first addresses the New York claims, then turns to the non-New York claims.

### i.   New York General Business Law

The pleading standard governing a 12(b)(6) motion to dismiss for failure to state a claim is set by either Rule 8(a) or Rule 9(b). Because prevailing on a N.Y. G.B.L. § 349 claim does not require

proving all the elements of common-law fraud, the Second Circuit has held that an action under § 349 need only satisfy the comparatively lax requirements of Rule 8(a). *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008), *rev'd on other grounds sub nom. Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983 (2010). This reasoning applies to § 350, which unlike common-law fraud does not require proof of fraudulent intent. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); S*imply Lite Food Corp. v. Aetna Cas. & Sur. Co. of Am.*, 245 A.D.2d 500, 500 (2d Dep't 1997) (holding that §§ 349 and 350 "do not require proof of intentional or even reckless conduct"). Therefore, Plaintiff need only satisfy the requirements of Rule 8(a) to defeat Defendants' motion to dismiss his §§ 349 and 350 claims against Bartlett.

Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This "extremely permissive" requirement, *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004), is designed simply to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014). "Fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of *res judicata*, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder*, 360 F.3d at 79.

Plaintiff claims that Defendants' conduct in connection with the sales in question violates N.Y. G.B.L. §§ 349 and 350. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State]." N.Y. Gen. Bus. Law § 349. Similarly, § 350 proscribes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* § 350. "To successfully assert a claim under either N.Y. G.B.L. [§§] 349 or 350, a plaintiff must allege that a defendant

has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021).

Defendants do not dispute that the Complaint, taken as a whole, contains allegations sufficient to state a claim under the above elements. (*See* Mot. at 7-8.) They nonetheless move for dismissal of the §§ 349 and 350 claims against Bartlett on the basis of Plaintiff's failure to reference Bartlett by name in Counts I and II of the Complaint. (*Id.* at 8.) Plaintiff responds that the Complaint's use of "group pleading" is permissible under the circumstances and that, in any event, Counts I and II incorporate Bartlett-specific allegations by reference. (Opp. at 11-13.) Because Defendants' objection is essentially about fair notice, the question is whether Plaintiff's pleading is appropriate under Rule 8(a).

The Second Circuit has held that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" can preclude fair notice, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001), but it has stopped short of "requir[ing] plaintiffs formally to separate claims defendant by defendant in order to satisfy [Rule 8]," *Wynder*, 360 F.3d at 77. It is therefore not uncommon for courts in this circuit to allow group pleading, provided that the complaint conveys the requisite notice. *See, e.g.*, *Vantone Grp. LLC v. Yangpu NGT Indus. Co.*, No. 13-CV-7639 (LTS) (MHD), 2015 WL 4040882, at *12-13 (S.D.N.Y. July 2, 2015) (declining to dismiss claims asserted against 24 defendants collectively, a technique that "muddle[d]" the allegations but still gave the defendants "adequate notice" of the nature of the claims); *Hudak v. Berkley Grp., Inc.*, No. 13-CV-89 (WWE), 2014 WL 354676, at *10-11 (D. Conn. Jan. 23, 2014) (excusing the complaint's failure to define each defendant's role in an alleged joint scheme, as "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint

alerts defendants that identical claims are asserted against each defendant"); *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 422-23 (S.D.N.Y. 2010) (accepting as true the plaintiffs' assertion of factual bases for their collective allegations, while suggesting that the defendants ought to have moved for a more definite statement pursuant to Rule 12(e) instead of dismissal on Rule 8(a) grounds).

Here, Defendants are correct that Bartlett does not appear by name in Counts I and II of the complaint, both of which exclusively allege conduct on the part of "Farmland" and "Defendants." (*See* Compl. at 17-20.) However, as Plaintiff notes, the Complaint begins by defining "Farmland" and "Defendants" as interchangeable collective terms encompassing both Bartlett and Farmland. (*Id.* at 1.) Moreover, both Counts I and II incorporate "each and every allegation contained in the foregoing paragraphs as if fully set forth herein." (*Id.* ¶¶ 92, 104.) One such allegation, albeit one set forth in the "PARTIES" section, specifically alleges that "Bartlett Dairy, Inc." not only "advertises, markets, and distributes Farmland's Products," but also "created and/or authorized the false and deceptive labeling and advertising of the Products." (*Id.* ¶ 23.)

Notwithstanding the Complaint's shortcomings, the court finds that the Complaint is sufficiently detailed to put Bartlett on notice as to the nature and factual grounding of Plaintiff's §§ 349 and 350 claims. *See Wynder*, 360 F.3d at 79-80 (finding abuse of discretion in the district court's dismissal of a complaint that, although "a model of neither clarity nor brevity," gave fair notice); *see also* 2 James Wm. Moore *et al.*, Moore's Federal Practice § 8.04[1] (3d ed. 1999) ("[Rule 8(a)] is fashioned in the interest of fair and reasonable notice, not technicality."). Bartlett has adequate notice that Plaintiff's §§ 349 and 350 claims pertain, *inter alia*, to Bartlett's alleged role in the labeling and advertising of

allegedly mislabeled and falsely advertised goods. Plaintiff's allegations "enable [Bartlett] to answer and prepare for trial" on a specific triable question. *Wynder*, 360 F.3d at 79. And Plaintiff's somewhat imprecise use of "and/or" in describing Bartlett's conduct is not fatal, as mere authorization of "false and deceptive labeling and advertising" would still support liability under §§ 349 and 350. *See Plavin v. Group Health Inc.*, 35 N.Y.3d 1, 9 (N.Y. 2020) ("This Court has recognized that [N.Y. G.B.L.] §§ 349 and 350 on their face apply to virtually all economic activity, and their application has been correspondingly broad."). Thus, despite Defendants' insistence that "it is uncontested that Bartlett is merely a distributor," Plaintiff's allegations present a triable issue regarding the nature of Bartlett's role in bringing the dairy products to market. Defendants may ultimately prevail on that issue, but at the motion to dismiss stage the court must accept all factual allegations in the complaint as true, and doing so here requires the court to deny Defendants' motion to dismiss.[11]

---

[11] It is important to distinguish this narrow factual dispute about Bartlett's conduct from the broader question of how the Bartlett-Farmland relationship should be classified. Plaintiff defines Farmland as a "wholly owned subsidiary" of Bartlett and alleges that the two entities "share[] high-level management officials and jointly manage [their] business operations." (Compl. ¶¶ 24-25.) Defendants, detecting an attempt to pierce the corporate veil, argue that Plaintiff has failed to plead veil-piercing's prerequisites and that this failure requires dismissal. (Mot. at 7.) The precedent Defendants cite for this rule address the imposition of liability after trial, and are therefore inapposite at this early stage. *See ITEL Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 909 F.2d 698, 701, 703-04 (2d Cir. 1990) (affirming district court's refusal, after trial, to pierce the corporate veil); *Gartner v. Snyder*, 607 F.2d 582, 583 (2d Cir. 1979) (reversing judgment of personal liability imposed via veil-piercing theory). And, in any event, the Complaint makes limited but sufficient allegations against Bartlett itself, *i.e.*, independent of whatever control it does or does not wield over Farmland.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims against Bartlett is DENIED.

ii.   <u>Non-New York Statutory Claims</u>

Plaintiff's other statutory claims present a potentially more involved analysis. Preliminarily, the court assumes that Rule 9(b) governs, taking as true Defendants' claim that "each of the statutes creating the basis for the Foreign Statutory Claims requires such claim to be pleaded with particularity." (Mot. at 10.)

Rule 9(b) requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "To satisfy the pleading requirements of Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Wood ex rel. United States v. Applied Research Assocs.*, 328 F. App'x. 744, 747 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). In essence, Rule 9(b) requires the plaintiff to plead the who, what, where, when, and how of the allegedly deceptive or fraudulent advertising. "[A]lthough Rule 9(b) permits knowledge to be averred generally, [the Second Circuit has] repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent. Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *Id.*

As with Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims, Defendants move to dismiss the non-New York statutory claims against Bartlett—and only Bartlett—on grounds of Plaintiff's purported failure to attribute any misrepresentation to Bartlett. Specifically, they argue that "[P]laintiff . . . has not pleaded any act by Bartlett

sufficient to sustain a claim under any of the applicable stat-
utes[,] each of which require[s] some affirmative
misrepresentation by the defendant," and that Plaintiff's use of
the collective "Defendants" in Count III does not "miraculously
change" Farmland labels into Bartlett labels. (Mot. at 10-11.) Re-
framing this argument in terms of the Rule 9(b) standard,
Defendants in effect acknowledge that Plaintiff has identified the
Products' labeling as the statement he contends was fraudulent,
but they dispute whether Plaintiff has identified the "speaker" be-
hind the labeling.

That argument is without merit. Even under Rule 9(b)'s height-
ened pleading standard, "there is no fixed requirement . . . to
identify a single entity within the group on pain of dismissal."
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d
160, 173 (2d Cir. 2015). Rather, "[w]here a plural author is im-
plied by the nature of the representations . . . group pleading may
satisfy the source identification required by Rule 9(b)." *Id.*

Count III incorporates the allegation that Bartlett "created and/or
authorized" the Products' labeling, and the collective definitions
for Bartlett and Farmland, *e.g.*, "Defendants," is stated clearly at
the outset of the Complaint. Accordingly, "[w]hen read together
with the complaint as a whole," Count III suffices to identify the
speaker and "to inform [Bartlett] of the nature of [its] alleged
participation in the fraud." *Id.* (finding that the complaint satis-
fied Rule 9(b), in part, because it "states at the outset that it will
refer to [the] entities collectively"). The court additionally finds
that Rule 9(b)'s time and place requirement is met; Plaintiff in
effect alleges that Bartlett misrepresents the Products' content at
the moment of every unit's labeling.

Whether the Complaint explains why Bartlett's statement was
fraudulent is a closer question because, unlike the conduct alle-
gations that suffice to support Plaintiff's N.Y. G.B.L. §§ 349 and

350 claims, the scienter allegations are pleaded against Defendants as a collective. But Defendants, in choosing not to move for dismissal of the non-New York statutory claims against Farmland, in effect concede that Plaintiff pleads a sufficient factual basis for a strong inference of fraudulent intent on Farmland's part. And if Farmland had the requisite scienter, the Complaint readily permits an inference that the same is true of Bartlett by alleging that Bartlett (1) was directly responsible for the Products' labeling, (2) is Farmland's parent company, and (3) participates in the management of Farmland's business operations. In drawing this inference, the court need not examine whether Farmland acted as Bartlett's alter ego or whether Plaintiff alleged such relationship with sufficient particularity, because Plaintiff seeks to hold Bartlett liable for its own acts, not for the acts of its alleged subsidiary. Accordingly, Plaintiff has sufficiently pleaded the non-New York statutory claims against Bartlett under Rule 9(b)'s heightened pleading requirements.

The one outlier, however, is Plaintiff's class action claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat., § 42-110a. CUTPA requires in-state residency of a class representative. *See* Conn. Gen. Stat., § 42-110g(b); *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 505 (D. Conn. 2015); *Metro. Enter. Corp. v. United Techs. Int'l, Corp., Pratt & Whitney Large Com. Engines Div.*, No. 03-CV-1685 (JBA), 2004 WL 1497545, at *4 (D. Conn. June 28, 2004) ("[A] foreign person suffering ascertainable loss outside of Connecticut from unlawful conduct occurring inside the state may initiate an individual action in Connecticut, but may not bring a class action because such plaintiff could not be representative of class members with the statutorily required in-state residency or injury characteristics."). This in-state class representative requirement "is a prominent part of the statutory scheme," *Chapman v. Priceline Grp., Inc.*, No. 15-CV-1519 (RNC), 2017 WL 4366716, at *7 (D. Conn. Sept. 30, 2017), which Rule 23 did not displace, *see id.*

(applying Justice Stevens's "intertwined" test explained in *Shady Grove*); *Fraiser*, 109 F. Supp. 3d at 505-06 (same).

Defendants make passing reference to CUTPA's in-state class representative requirement, arguing that Plaintiff, a resident of New York, lacks standing to bring a class action claim on behalf of Connecticut consumers. (*See* Mot. at 12 n.8.) Defendants are right that this requirement bars Plaintiff's claim—but not because of standing.

Plaintiff alleges that he purchased the at-issue Products in New York and suffered a cognizable injury upon purchase. That means Plaintiff has Article III standing to bring a claim under, *inter alia*, N.Y. G.B.L. §§ 349, 350. That also means he "has standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' consumer protection laws." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 92-93 (2d Cir. 2018) ("[W]hether a plaintiff can bring a class action under state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III.");[12] *see also Mayor of Baltimore v. Actelion Pharamceuticals Ltd.*, 995 F.3d 123, 133-34 (4th Cir. 2021).

Plaintiff does, however, lack *statutory* standing. Statutory standing—a concept distinct from Article III and prudential standing (and perhaps best understood as not even standing at all)—"is effectively the same as a dismissal for failure to state a claim." *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 51-53 (4th Cir. 2011); *see also Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *9 n.5 (S.D.N.Y. June 2, 2020) ("[D]ismissal for lack of statutory standing is typically considered a dismissal for failure to state claim

---

[12] *Langan* considered a Connecticut citizen's CUTPA class action claim for an injury suffered in state. *See* 897 F.3d at 91-92.

under Federal Rule of Civil Procedure 12(b)(6).”). Because Plaintiff, a New Yorker, cannot plead a class action claim under CUTPA, Defendants’ motion to dismiss Plaintiff’s CUTPA class action claim is GRANTED for failure to state a claim.

In reaching this decision, the court heeds and repeats Judge Colleen McMahon’s caution that courts “not read *Langan* any more broadly than it purports to reach.” *Sergeants Benevolent Ass’n Health & Welfare Fund v. Actavis, plc*, No. 15-CV-6549 (CM), 2018 WL 7197233, at *21 (S.D.N.Y. Dec. 26, 2018).

> Nothing in *Langan* . . . precludes a defendant from moving to dismiss a CAFA plaintiff’s claims under a particular statute pursuant to Rule 12(b)(6), on the grounds that the plaintiff fails to state a claim for its own account—a question entirely different from whether it has constitutional standing. CAFA . . . cannot be read to enable plaintiffs to state claims when the laws of the several states specifically provide to the contrary. It is imperative that too much not be read into *Langan* since neither CAFA nor state consumer protection laws require counsel to compete with other advocates for the positions of class counsel and lead plaintiff, both of which create healthy incentives to find the best class representative(s) possible.

*Id.* In short, “plaintiffs cannot use class actions to escape pleading requirements,” *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 378 (E.D.N.Y. 2010), and statutory standing under CUTPA is a pleading requirement. Waiting to consider this question until class certification comes at cost. *See Sergeants Benevolent Ass’n Health & Welfare Fund*, 2018 WL 7197233, at *22. Deciding it now benefits both parties: for plaintiffs, it alerts them to a pleading deficiency at an early stage; for defendants, it eliminates plaintiff’s unearned settlement leverage. The foregoing is not to say that a court should *sua sponte* “comb through all of [p]laintiffs’ consumer protection

claims" in search of error. *See id.* at \*36. But where, as here, defendants affirmatively raise the arguments, the court should, as it must, take them seriously.

Accordingly, Defendants' motion to dismiss Plaintiff's non-New York statutory claims against Bartlett is GRANTED as to the CUTPA class action claim, and DENIED as to the rest.

### b.   Express Warranty

Defendants move to dismiss the breach of express warranty claim against Bartlett. Plaintiff does not oppose this argument and has, therefore, abandoned this claim. *See Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020). Accordingly, Defendants' motion to dismiss the express warranty claim against Bartlett is GRANTED. Plaintiff's claim for breach of express warranty against Farmland remains intact.

### 2.   Unjust Enrichment Claims

Finally, Plaintiff asserts an unjust enrichment claim against Defendants. (Compl. ¶¶ 130-32.) Specifically, Plaintiff argues that "Defendants have been unjustly enriched" and that "it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received" from the sale of goods that "were not what Defendants represented them to be." (*Id.* ¶ 132.) Defendants move to dismiss this claim against all Defendants on the theory that it is "duplicative of [Plaintiff's] consumer fraud claims and warranty claims." (Mot. at 6-7.)

Under New York law, "[t]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). But "unjust enrichment is not a catchall cause of action to be used when others fail," and it "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Yet Plaintiff's claim does just that. The Complaint does not attempt, beyond a

perfunctory "[i]n the alternative" heading, to explain how Plaintiff's unjust enrichment claim is non-duplicative of his other claims. (*See* Compl. ¶¶ 130-132.) Even pleaded in the alternative, however, "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).

This is not the unusual case in which Plaintiff has sufficiently alleged a nonduplicative claim for unjust enrichment; rather, Plaintiff premises the unjust enrichment claim on the same factual allegations as those supporting his other claims. Accordingly, Defendants' motion to dismiss the unjust enrichment claim against Defendants is GRANTED.

### III. CONCLUSION

Based on the foregoing, Defendants' (Dkt. 34) motion to dismiss for lack of jurisdiction and failure to state a claim is GRANTED in part and DENIED in part. The court has jurisdiction to consider the case; Defendants' motion to dismiss on that basis is DENIED. So too is Defendants' motion to dismiss for failure to state a claim under the consumer protection laws of New York, Delaware, Maryland, Massachusetts, and New Jersey.

Defendants' motions to dismiss for failure to state a class action claim under Connecticut's consumer protection law; an unjust enrichment claim; and a breach of express warranty claim as to Bartlett, are GRANTED. However, Plaintiff is granted leave to amend the Complaint as to the CUTPA class action claim and the unjust enrichment claim against Bartlett. If he chooses to do so, the amendment shall be made within fourteen days of the date

of this Order. A failure to do so will result in a dismissal of those claims with prejudice. The parties are directed to confer and contact Magistrate Judge Sanket J. Bulsara.

SO ORDERED.

Dated:     Brooklyn, New York
           March 14, 2022

                                         s/Nicholas G. Garaufis
                                       NICHOLAS G. GARAUFIS
                                       United States District Judge

24