**PRESS KORAL LLP**
641 LEXINGTON AVENUE, 13TH FLOOR
NEW YORK, NY 10022

Matthew J. Press
(212) 922-1111

Cell (347) 419-0983
mpress@presskoral.com

December 7, 2022

**BY ECF**

Hon. Sanket J. Bulsara,
Magistrate Judge
USDC, EDNY
225 Cadman Plaza E,
Brooklyn, NY 11201

*Re:*   ***Gibson v. Bartlett Dairy, Inc. et al.,* Case No. 20-cv-2848 (NGG) (SJB)**

Dear Judge Bulsara:

On November 9, 2022, Defendants Bartlett Dairy, Inc. and Farmland Fresh Dairies, LLC ("Defendants") purported to subpoena the deposition testimony of Kim E. Richman, Esq., who is counsel to Plaintiff Andrew Gibson ("Plaintiff"). Mr. Richman, respectfully moves to quash the subpoena (attached as Exhibit D), which poses an undue burden, is duplicative of discovery propounded on parties and fact witnesses to this case and appears to have been served for primarily for harassment. Mr. Richman timely objected to the subpoena on November 23, 2022, and the parties met and conferred on December 2, 2022 (the "12/2 M&C"), at which time Plaintiffs' counsel and I presented the arguments set forth herein. Defendants refused to withdraw or limit the subpoena.

## BACKGROUND

This is a consumer-protection class action in which Plaintiff Andrew Gibson alleges that Defendants market dairy products with a "No Antibiotics" label even though (1) the cows were treated with antibiotics; and (2) the marketer does not ensure that no traces of those antibiotics remain in products sold to consumers. (*E.g.*, Compl. ¶¶ 5, 6, 41, 44.) Discovery has been underway since April 24, 2022. Mr. Richman and his law firm, Richman Law & Policy ("RLP"), represent Plaintiff and intend to move via Rule 23(g) to represent the class. The subpoena seeks (1) deposition testimony; (2) documents relating to attorney-client communications and counsel's communications with consulting laboratories and those laboratories' work for unrelated organizations; and € documents reflecting RLP's history and the qualifications of its attorneys.

## ARGUMENT

Under Federal Rule of Civil Procedure 45(d)(3)(A), "[c]ourts **must** quash or modify any Rule 45 subpoena that . . . '(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.'" *Bhatt v. Patel*, No. 18-CV-2063-ILG-SJB, 2020 U.S. Dist. LEXIS 262800, at *4 (E.D.N.Y. Oct. 19, 2020). Additional consideration should be given to whether "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

## I.    The subpoena for deposition testimony poses an undue and unnecessary burden on litigation counsel and should be quashed

The Second Circuit maintains a presumption against deposing a party's counsel. *Official Committee of Unsecured Creditors of Hechinger Investment Co. of Delaware, Inc. v. Friedman* (*In re Subpoena Issued to Dennis Friedman*), 350 F.3d 65 (2d Cir. 2003), sets forth an approach for weighing all relevant facts and circumstances to determine whether the disfavored deposition entails "inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* at 72. Under this approach, courts within the Second Circuit almost invariably find the deposition of a lawyer actively litigating the case, or even associated at the same firm as trial counsel, to be inappropriate.[1]

At the 12/2 M&C, Defendants' counsel David Schrader, Esq., asserted two grounds for deposing Mr. Richman: (1) the need to establish the date upon which the attorney-client relationship was formed, and (2) an effort to disqualify class counsel for "fabricating" litigation. (Declaration of Kathryn Evans ("Evans Decl.") ¶ 10 (attached as Exhibit A).) "Fed. R. Civ. P. 26(c) authorizes a federal court, for good cause, to issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." *Duling v. Gristede's Op. Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (internal quotation marks omitted). Ample cause exists to quash the subpoena on this basis.

***First***, at the 12/2 M&C, Defendants' counsel Mr. Schrader stated that Mr. Richman had put himself "at issue" by seeking appointment as class counsel and therefore was subject to discovery.[2] (Evans Decl. ¶ 11.) A party's desire to disqualify opposing counsel is not grounds for a deposition, as Magistrate Judge Boyle held in *Sea Tow International, Inc. v. Pontin*: "The alleged 'need' to depose Stein appears to be nothing more than another attempt by defendants to bootstrap Stein as a fact witness in the hopes of disqualifying him from this litigation entirely." 246 F.R.D. 421, 428 (E.D.N.Y. 2007) (Boyle, Mag. J.) (quashing subpoena). RLP has consistently informed Defendants that it is producing a firm résumé and will include any supporting materials in conjunction with its anticipated Rule 23(g) motion, which is yet to be filed. (Evans Decl. ¶ 12.)

***Second***, at the 12/2 M&C, Defendants' counsel Mr. Schrader made repeated accusations that Plaintiff's case was "fabricated" by counsel and/or "generated" by an unnamed "advocacy group," because counsel requested testing of Farmland products before being retained by Mr. Gibson. (Evans Decl. ¶ 13.)[3] There is nothing inappropriate, however, about counsel conducting

---

[1] *See, e.g.*, *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767, 2022 U.S. Dist. LEXIS 40049, at *5 (S.D.N.Y. Mar. 7, 2022); *KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19CV2918, 2020 U.S. Dist. LEXIS 73465, at *19 (S.D.N.Y. Apr. 24, 2020); *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 423 (E.D.N.Y. 2007) (Boyle, M.J.); *ResQnet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 U.S. Dist. LEXIS 13579, at *12 (S.D.N.Y. July 22, 2004).

[2] At a prior meet-and-confer, on November 1, 2022, Mr. Schrader also stated that Defendants planned to seek RLP's disqualification as counsel, that time on a mistaken belief that the firm had faced excessive attorney turn-over due to a reorganization. (Evans Decl. ¶ 6.)

[3] RLP partners with a wide variety of nonprofit groups, many of whom RLP represents in impact litigation. These are open and disclosed relationships, which often result in nonprofit "private attorney general" litigation on behalf of consumers; this, however, is a consumer-protection class action, not a nonprofit action. Mr. Schrader declined to clarify what "advocacy group" he thought might have "generated" this litigation, or why

the investigation necessary to an action before allowing itself to be engaged by the client. To the contrary, the average consumer lacks the means to discover the truth about something like antibiotics in dairy products (Compl. ¶ 12), and it is therefore incumbent upon counsel to do so in order to protect consumer interests. *See, e.g.*, *Sanchez v. Kambousi Rest. Partners, LLC*, No. 15 Civ. 05880, 2016 U.S. Dist. LEXIS 203410, at *6-7 (S.D.N.Y. Sept. 14, 2016) (speaking approvingly of class counsel's "thoroughly investigat[ing] the merits of any potential claims and defenses" prior to initiating suit, including "selection of the optimal named plaintiffs"). Allowing Defendants to depose Mr. Richman on non-existent "fabrication" would be a fishing expedition.

**Third**, as to Defense counsel's intent to interrogate Mr. Richman on the date the attorney-client relationship was formed with Mr. Gibson: This information, according to Mr. Schrader, is intended to support his argument that no work product protection can attach to documents generated before Mr. Gibson decided to retain counsel. (Evans Decl. ¶ 14.) That argument is legally incorrect; as set forth *infra*, Part II, attorney work product is not tied to when a plaintiff retained counsel. Moreover, even if this information is needed, the deposition of Mr. Richman is not; Mr. Gibson, already scheduled for deposition, is well able to testify to such communications himself. *See, e.g.*, *KOS Bldg. Grp., LLC*, 2020 U.S. Dist. LEXIS 73465, at *14-15 ("[T]he Court does not believe that Defendants have established a need to depose Brash because they have failed to demonstrate that information related to these issues is 'peculiarly within [his] knowledge.'").[4]

**Fourth**, given the stated intention of Defendants' counsel to ask about attorney-client communications, and the "information requests"[5] seeking discovery of communications with consultants, the proposed deposition risks "encountering privilege and work-product issues." *See, e.g.*, *Unit Drilling Co. v. EEOC*, No. 2:14mc236, 2014 U.S. Dist. LEXIS 84456, at *6 (D. Utah June 19, 2014) ("While . . . the EEOC only seeks to question [counsel] regarding the factual basis for the Position Statement, this court is not persuaded that this line of questioning would not delve into 'mental impressions, conclusions, opinions, or legal theories [counsel] authored in anticipation of [the instant] litigation.'") (quoting *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006)).

## II.   The requests for "documents and information" are cumulative and overbroad, and seek documents protected by privilege

On the subpoena itself, only the box for "Testimony" is checked. Nevertheless, in the field for "Production" is written "See Exhibit 1." Exhibit 1, in turn, is titled "Document and Information Requests," which includes numbered paragraphs, with some numbers repeated. For purposes of this section, Mr. Richman assumes that the subpoena does seek production of documents, according to the 30 requests. Those requests, however, are duplicative, seek attorney work product, and are wildly overbroad.

---

that even would be relevant—but in any event, there is no such connection (Richman Decl. ¶ 7 (attached as Exhibit C)).

[4] Regarding Mr. Schrader's request to know the date upon which client communications began, counsel were in communication with another client as of December 2019 about potential Farmland litigation. (Declaration of Samuel J. Strauss ("Strauss Decl.") ¶ 5 (attached as Exhibit B).)

[5] Exhibit 1 to the subpoena is titled "Document and Information Requests." Mr. Richman construes the "information requests" to indicate topics upon which testimony would be sought.

**First**, the requests for "documents and information" served upon class counsel Mr. Richman are substantively ***identical*** to requests for production served upon Mr. Gibson (Evans Decl. ¶ 15); that is, without waiting for Mr. Gibson's responses or production, Defendants have burdened Plaintiff's counsel with a subpoena for the ***same*** information. In addition, regarding the laboratory information sought from both Mr. Gibson and his counsel, Defendants have now issued third-party subpoenas to the laboratories for production of the same documents. (Evans Decl. ¶ 16.) At the 12/2 M&C, Defendants' counsel Mr. Schrader maintained that Defendants have ***no obligation*** to discover documents through means less onerous than subpoena upon Plaintiff's counsel. (Evans Decl. ¶ 17.) That simply is incorrect: "the relevant issue is why [defendant] should be allowed to seek information directly from plaintiffs' counsel rather than from other sources." *Howard v. Securitas Sec. Servs., USA, Inc.*, 630 F. Supp.2d 905, 911 (N.D. Ill. 2009) (quashing subpoena); *see also, e.g.*, *KOS Bldg. Grp.*, 2020 U.S. Dist. LEXIS 73465, at *17 (quashing subpoena where defendants failed to explain why they had not explored other options). Defendants have no reason to burden Plaintiffs' counsel for documents they already have requested from Plaintiff ***and*** from other non-attorney third parties.

**Second**, the subpoena seeks attorney work product, namely, counsel's own notes and communications with consultant laboratories, which test products at the firm's request for counsel to develop theories of litigation and determine whether to proceed with an action.[6] At the 12/2 M&C, Defendants' counsel Mr. Schrader maintained that documents created before counsel and Mr. Gibson formed an attorney-client relationship cannot be protected as work product. (Evans Decl. ¶ 14.)[7] But Mr. Schrader is mistaken. This question was addressed just months ago, in *Gross v. Agri Stats, Inc.*, which considered whether the work-product doctrine "can extend to investigative materials that class counsel prepared with class litigation in mind, although on behalf of named Plaintiffs who may not have formally retained class counsel until the investigation was under way, substantially completed, or even completed." 2022 U.S. Dist. LEXIS 46510, at *21 (N.D. Ill. March 16, 2022). The court answered in the affirmative, holding that neither Rule 26(b)(3) nor precedent would mean that plaintiff counsel's work product should "be disclosed to Defendants whom [plaintiff counsel] sued on behalf of the named Plaintiffs in this case, simply because [plaintiff counsel] retained the investigators or caused the materials to be generated before the named Plaintiffs signed a retention letter." *Id.* at 33; *see also In re Tier 2 Jeg Telcoms. Cases*, No. 4:09-cv-00262, 2012 U.S. Dist. LEXIS 205687, at *11 (N.D. Iowa Sept. 26, 2012) ("There is simply no textual support in Rule 26(b)(3) for the idea that the existence of an attorney-client relationship is a condition precedent to the application of the work-product rule . . . .").[8]

---

[6] Under the doctrine set forth in *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), a consultant is the agent of counsel, and falls within privilege, where the consultant is "necessary, or at least highly useful" to counsel's forming legal advice and strategy.

[7] Counsel's communications with clients about this consumer class action predated actual execution of the retainers. (Strauss Decl. ¶ 4-5.)

[8] *Cf. United States v. Adlman*, 134 F.3d 1194, 1198-1204 (2d Cir. 1998) (rejecting notion that documents must be prepared "primarily to assist in litigation" in order to enjoy protection and holding instead that relevant test is whether document "can fairly be said to have been prepared because of the prospect of litigation"); *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("[T]here is no rule that bars application of work product protection to documents created prior to the event giving rise to litigation. Nor do we see any reason for such a limitation.").

4

***Third***, the requests for documents are not just overbroad, but so overbroad that they are impossible to interpret. *See, e.g., Alessi Domenico S.p.A. v. OTC Int'l Ltd.*, No. CV 2004-5383 (CPS) (MDG), 2006 U.S. Dist. LEXIS 78517, at *4 (E.D.N.Y. Oct. 25, 2006) ("The broadness of the subpoena . . . underscores the inappropriate scope of discovery sought.") (citing *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004), for proposition that "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses"). It is difficult to understand even where to begin with some of the requests. For example:

- "documents relating to any payments or compensation paid to" any laboratory, including unnamed laboratories, by or on behalf of "any person in connection with evaluating potential legal matters for . . . any animal rights' groups"—"not limited to testing or consultation done relating to [D]efendants' products" (Req. No. 25);

- "documents relating to agreements for consulting, test services or other services" between Plaintiff Gibson's counsel and ***any*** laboratory, named or unnamed, "not limited to testing or consultation done in connection with [D]efendants' products" (Req. No. 24);

- "documents relating to any proposed tests which were ***not*** performed" (Req. No. 1 (emphasis added); *see also* Reqs. No. 12-21);

- "Policies, practices, and standards in your possession (including in the possession of your agents, experts and laboratories) relating to the permissibility of antibiotics in milk products sold" (Req. No. 9; *see also* Reqs. 10-11).[9]

## CONCLUSION

There simply is no reason for Defendants to subpoena opposing counsel—on grounds that are irrelevant, legally incorrect, duplicative and impossible to decipher. The authorities set forth herein establish that this is not a close call. Accordingly, Mr. Richman respectfully requests that the subpoena be quashed, and that he be awarded costs of compiling his objections and preparing this motion. *See, e.g., Molefi v. Oppenheimer Trust*, No. 03 CV 5631 (FB) (VVP), 2007 U.S. Dist. LEXIS 10554, at *5-6 (E.D.N.Y. Feb. 15, 2007) ("Rule 45([d])(1) imposes a duty upon a party issuing a subpoena to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.' Fed. R. Civ. P. 45([d])(1). To ensure compliance with this requirement, the court is authorized to 'impose upon the party or attorney in breach of [the] duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.' *Id.*").

Respectfully Submitted,

Matthew J. Press

---

[9] Regulations relating to the allowable antibiotic levels in milk products are in the public domain and therefore equally available to Defendants without burdening Plaintiff's counsel. If the request means to implicate practices that cover Defendants' suppliers for permissibility of antibiotics in milk, those would be ***more*** accessible to ***Defendants*** than to Plaintiff's counsel.

5